**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| MICHAEL S.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil No. 3:25-cv-638 (DJN) |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Michael S. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision denying him Title II disability insurance benefits beginning on April 1, 2005 based on medical improvement of his cognitive impairments from at least that date. This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 5, 12, 17.) The motions have been fully briefed (ECF Nos. 12, 13, 17, 18), rendering this matter ripe for review.

Plaintiff moves the Court to reverse the decision of the Commissioner and remand Plaintiff's claim for further administrative proceedings. (ECF No. 13, at 28, 29.)[2] As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by (1) failing to make a finding that his case could be reopened based on fraud under 20 C.F.R. § 404.988; (2) making a retroactive finding of non-disability back to April 1, 2005 based on medical improvement under 20 C.F.R. § 404.1594(e)(1) without a valid reopening under 20 C.F.R. § 404.988; and (3) failing to treat

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.
[2] The Court cites to the pages of this document as numbered by CM-ECF.

an August 26, 2005 comparison point decision ("CPD"), which found disability, as binding and conduct a proper continuing disability review ("CDR") to find medical improvement as of the date of the current adjudication. (ECF No. 13, at 9, 11-20.)[3] Each of these assignments of error challenge the finding of fraud that reopened the 2005 CPD.[4]

In response, the Commissioner contends that the agency complied with regulations in "reopening the 2005 decision finding disability based on a finding of fraud." (ECF No. 17, at 11.) Specifically, he argues that the ALJ affirmed a prior fraud determination made by the Disability Determination Services ("DDS"), the state-level agency who evaluated Plaintiff's case. (ECF No. 17, at 12.) Moreover, the Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff had medically improved as of April 1, 2005, rendering him not disabled. (ECF No. 17, at 11.) Therefore, he requests that the Court affirm the decision denying Plaintiff benefits beginning on April 1, 2005. (*See* ECF No. 17, at 13, 16.)

Considering the record in this case, the Court cannot find that Plaintiff received an adequate opportunity to challenge the finding of fraud which served as the basis for reopening the 2005 CPD. In addition, the ALJ failed to identify or evaluate the evidentiary basis for the fraud determination. Instead, she made no determination about fraud. Given these due process concerns

---

[3] After a finding of disability has been made, the entitlement to benefits "must be reviewed periodically" to determine if a claimant remains eligible for payments based on disability. 20 C.F.R. § 404.1594(a). These periodic evaluations are known as continuing disability reviews, or CDRs. CDRs look for medical improvement, or "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled . . . ." *Id.* § 404.1594(c)(1). The most recent favorable decision is known as the comparison point decision, or CPD.

[4] Plaintiff also raises two other challenges to the ALJ's decision, specifically that the ALJ failed to evaluate the medical opinion of Dr. Michele Killough Nelson and applied incorrect "Paragraph B" criteria in evaluating the functional limitations of his mental impairments. (ECF No. 13, at 20-28.) Because the Court recommends remand to allow Plaintiff the opportunity to challenge the fraud finding and the ALJ to evaluate the evidence regarding the same, the Court need not address these other challenges.

and the absence of substantial evidence supporting the ALJ's denial of benefits dating back to 2005, the Court finds remand for further administrative proceedings the appropriate remedy. Therefore, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED; (2) Defendant's Motion for Summary Judgment (ECF No. 17) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL HISTORY

After sustaining a traumatic brain injury in a motor vehicle accident, Plaintiff was awarded disability insurance benefits beginning on October 16, 1998, based on a listing-level mental impairment. (Administrative Record ("R.") at 23, 25, 194.)[5] CDRs occurred in 2001 and 2005, with the most recent CPD finding Plaintiff disabled occurring on August 26, 2005. (R. at 24-25, 194.)

A November 2019 CDR reopened the August 26, 2005 CPD based on fraud, specifically allegations that Plaintiff failed to disclose relevant information and falsely represented the extent of his functioning during an August 2005 consultative examination. (R. at 88-103, 105, 137, 139-40.) The November 2019 CDR determined that Plaintiff's disability should have ended in April 2005. (R. at 99, 102, 105, 139-40.) Following a June 2023 hearing, a state agency disability hearing officer upheld that determination. (R. at 177-88, 190-203.)

[5] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

Plaintiff requested a hearing before an ALJ, and one was held on December 14, 2023. (R. at 42-84, 208.) On August 19, 2024, the ALJ issued a written decision, finding that Plaintiff's disability ended on April 1, 2005 due to medical improvement. (R. at 23-36.) On June 11, 2025, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Once a finding of disability has been made, a recipient of benefits "may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling . . . ." *Id.* § 423(f). Any such finding must be based on "substantial evidence." *Id.*

Ordinarily, SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). However, when determining whether

a recipient of benefits continues to be disabled under the Act, an eight-step sequential evaluation process applies. 20 C.F.R. § 404.1594(f).

At step one, the ALJ determines whether the claimant is currently engaging in substantial gainful activity. *Id.* § 404.1594(f)(1). A non-disability finding will be made if the claimant is performing substantial gainful activity and any applicable trial period has been completed. *See id.* At step two, the ALJ decides whether the claimant's impairments meet or equal the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I, and if a listing is met, then disability continues. 20 C.F.R. § 404.1594(f)(2). At step three, the ALJ determines whether medical improvement has occurred; if so, the ALJ moves to step four, but if not, the ALJ skips to step five. *Id.* § 404.1594(f)(3). At step four, the ALJ decides whether the medical improvement is related to the claimant's ability to work—in other words, whether there has been an increase in the claimant's residual functional capacity ("RFC"). *Id.* § 404.1594(f)(4). If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five, but if medical improvement is related to the ability to work, the analysis skips to the step six. *Id.*

At step five, the ALJ determines whether an exception to medical improvement applies. *Id.* § 404.1594(f)(5). If no exception applies, the claimant's disability continues. *Id.* At step six, the ALJ considers whether all the claimant's current impairments in combination are severe. *Id.* § 404.1594(f)(6). If the impairments are not severe, the claimant is no longer disabled, but if the impairments are severe, then the analysis proceeds to the next step. *Id.* At step seven, the ALJ decides whether the claimant has the RFC to perform any of his or her past relevant work. *Id.* § 404.1594(f)(7). Finally, at step eight, if the claimant cannot engage in past relevant work, the ALJ determines whether the claimant can perform other work existing in the national economy. *Id.* § 404.1594(f)(8). The claimant bears the proof of burden at each step in this process, except

for the final eighth step. *Guiton v. Colvin*, 546 F. App'x 137, 141 (4th Cir. 2013) (unpublished).

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.* (quoting *Clarke*, 843 F.2d at 272-73).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589 (citation omitted). The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.

1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III. THE ALJ'S DECISION

The ALJ acknowledged that Plaintiff received benefits effective October 16, 1998 based on a neurocognitive disorder which met a listing. (R. at 25.) A 2001 CDR established continuing disability because no medical improvement could be shown. (R. at 25.) Another CDR on August 26, 2005 similarly found Plaintiff disabled. (R. at 23, 24, 25.) This was the most recent favorable decision, and therefore, the CPD. (R. at 24, 25.) According to the ALJ, "upon receiving new and material evidence, a reopening and revision resulted in benefits being ceased retroactively to 04/01/2005." (R. at 25.) Plaintiff appealed that decision. (R. at 25.)

The ALJ then followed the eight-step process for determining whether an individual is entitled to continued disability insurance benefits. (R. at 23-36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity through the August 19, 2024 date of decision. (R. at 25.) At step two, the ALJ found that, as of April 1, 2005, Plaintiff had medically determinable impairments of mood disorder due to general medical condition (remote head injury) and adjustment disorder with anxiety and depressed mood, but that he did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

At step three, the ALJ found that medical improvement occurred as of April 1, 2005. (R. at 28-29.) At step four, the ALJ concluded that the medical improvement related to the ability to work because, by April 1, 2005, Plaintiff's CPD impairment no longer met or medically equaled a listing. (R. at 29.) The ALJ skipped step five, because Plaintiff's medical improvement related to Plaintiff's ability to work. (R. at 29.) At step six, the ALJ determined that Plaintiff continued

to have severe impairments that caused more than minimal limitations in Plaintiff's ability to perform basic work activities. (R. at 29.)

At step seven, the ALJ found that, based on the impairments present since April 1, 2005, Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with additional mental limitations, but had no past relevant work. (R. at 29-30, 35.) Finally, at step eight, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, considering his vocational factors and RFC. (R. at 35-36.) Therefore, the ALJ concluded that Plaintiff's disability ended as of April 1, 2005 and that he remained not disabled since that date. (R. at 36.)

## IV. ANALYSIS

As discussed above, Plaintiff's assignments of error challenge the ALJ's ability to reopen the 2005 CPD based on a fraud determination, and the ALJ's finding of non-disability dating back to 2005 instead of the date of the CDR. (ECF No. 13, at 11-20.) Specifically, he argues that the ALJ erred by failing to make a finding as to the fraud allegation, which served as the basis for reopening the CPD under 20 C.F.R. § 404.988, and denied him due process, by not allowing him to challenge the fraud determination. (ECF No. 13, at 11-16.)

In response, the Commissioner contends that the ALJ did make a finding of fraud sufficient to reopen the case. (ECF No. 17, at 11.) He contends that the ALJ had "new and material evidence" (specifically, Plaintiff did not report returning to school for accounting classes at the same time he was working 20 hours per week at Gold's Gym in 2004 and 2005, passing the real estate license examination in July 2005, and beginning full-time work in 2006), which led to the ultimate determination that Plaintiff was no longer disabled. (ECF No. 17, at 12.)

As discussed below, Plaintiff presented documentary evidence pertaining to the fraud allegations during the administrative proceedings and presented (or attempted) to present witnesses at the administrative hearing regarding the same. However, he was told that fraud had been found and was not an issue on appeal. Consistent with that view, it appears that the ALJ neither evaluated Plaintiff's evidence challenging the fraud findings nor made any findings about the same. On this record, Plaintiff was not only denied a full opportunity to contest the fraud allegations, but the ALJ also made no findings as to that issue sufficient for this Court to conduct any meaningful judicial review. Accordingly, the Court recommends remand.

**A. <u>Applicable Legal Standards Regarding Fraud Allegations</u>**

SSA regulations limit the circumstances under which a determination or decision granting benefits may be reopened. *See* 20 C.F.R. § 404.988. The decision may be reopened for any reason within twelve months of its issuance and upon a finding of good cause if within four years of its issuance. *Id.* § 404.988(a), (b). A decision is subject to reopening at any time if "obtained by fraud or similar fault." *Id.* § 404.988(c).

Under the Act, the SSA must "immediately redetermine the entitlement of individuals to monthly insurance benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits . . . ." 42 U.S.C. § 405(u)(1)(A). "When redetermining the entitlement," the agency must "disregard any evidence if there is reason to believe that fraud . . . was involved in the providing of such evidence." *Id.* § 405(u)(1)(B). If a redetermination results in a finding of no entitlement to benefits, the Commissioner "may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." *Id.* § 405(u)(3).

Social Security Ruling ("SSR") 22-1p "explains the standards [the SSA] uses when [it] determine[s] whether there is reason to believe that fraud or similar fault was involved in providing evidence in connection with an application of benefits." SSR 22-1p, 2022 WL 2533116, at *2 (May 17, 2022).[6] It instructs ALJs to disregard evidence if "there is reason to believe that fraud or similar fault was involved in the providing of such evidence." *Id.* at *5. "In determining if there is reason to believe fraud or similar fault was involved, adjudicators may make reasonable inferences based on the totality of the circumstances such as facts or case characteristics common to patterns of known or suspected fraudulent activity." *Id.* SSR 22-1p further provides: "OIG is responsible for investigating fraud within our programs and must notify us under section 1129(l) of the Act when it has reason to believe that fraud was involved in an individual's claim for benefits or payments. We refer to this notification as a *section 1129(l) referral*."[7] *Id.* at *3 (emphasis added).

In *Kirk v. Commissioner of Social Security Administration*, the United States Court of Appeals for the Fourth Circuit held that SSA's redetermination procedures in effect at the time violated beneficiaries' procedural due process rights under the Fifth Amendment by denying them "the opportunity to contest the Office of the Inspector General's fraud allegations against them." 987 F.3d 314, 323 (4th Cir. 2021); *see also id.* at 328 ("[W]e hold that the Due Process Clause of the Fifth

---

[6] Plaintiff's brief cites SSR 16-1p instead (ECF No. 13, at 13 (citing SSR-16-1p, 2016 WL 1029284 (Mar. 14, 2016))), but SSR 22-1p "rescinds and replaces SSR 16-1p" as of May 17, 2022. SSR 22-1p, 2022 WL 2533116, at *1 (May 17, 2022).

[7] Section 1129(l) of the Act provides:

> As soon as the Inspector General, Social Security Administration, has *reason to believe that fraud* was involved in the application of an individual for monthly insurance benefits under subchapter II or for benefits under subchapter VIII or XVI, the Inspector General shall make available to the Commissioner of Social Security information identifying the individual . . . .

42 U.S.C. § 1320a–8(l) (emphasis added).

Amendment required SSA to provide Plaintiffs and those similarly situated an opportunity to contest the Office of the Inspector General's fraud allegations as to their individual cases."). The Fourth Circuit found that a plaintiff must be given an opportunity to rebut the SSA's fraud allegations at their hearings. *Id.* at 322-23.

**B. <u>Record Information Regarding the Fraud Allegation and Redetermination</u>**

On March 26, 2019, the Richmond Cooperative Disability Investigation Unit ("CDIU") received an anonymous allegation regarding Plaintiff's ability to work, which resulted in a fraud investigation. (R. at 580; *see also* R. at 139 ("The Social Security Administration (SSA), OIG and Richmond CDI Unit received this Title II medical CDR from the Richmond DDS Unit based on suspicion of work activity.").) The September 23, 2019 Summary Report of Investigation Transmittal and Receipt Form (R. at 139) is referenced in the Court Transcript Index and the List of Exhibits (R. at 37) as "OIG Section 1129 (l) Referral," indicating that OIG had reason to believe that fraud was involved in Plaintiff's claim for benefits or payments and notified the Commissioner pursuant to 42 U.S.C. § 1320a–8(l). A September 23, 2019 Summary Report of Investigation followed and was prepared by the CDIU to document Plaintiff's true level of functioning. (R. at 579-621.)

By letter dated November 8, 2019, Plaintiff was notified that his claim was under review based on new evidence showing "inconsistencies at the last decision between what you reported and what the medical records reported regarding how severely your impairments limited your ability to function and work." (R. at 137.) On November 27, 2019, the state agency notified Plaintiff that his benefits would stop based on health improvement. (R. at 140.) The notice stated: "This determination reopens and revised the previous determination(s) dated 8/26/2005. The prior decision is being reopened due to new and material evidence." (R. at 140.)

According to the initial disability determination explanation (R. at 88-103), the "new and material evidence" included the following:

> [Plaintiff] completed an associate's degree (8/2003), graduated Cum Laude Honors, and made Dean's list (2002/2003). He reported at the 2005 [consultative examination] (CE) working 20hrs/week at Golds Gym (2004/2005), but failed to report he had returned to school for accounting classes (same time he was working), passed the real estate license exam (7/2005), and conveyed different messages about his intent to work in real estate. He told his treating doctor he planned on going into real estate VS. questioning the CE doctor of viability of returning to work. Additionally, he started working full time work in 2006 and failed to report CLOSE TO 14 YEARS OF EARNINGS TO SSA

(R. at 98.)

> [I]t appears he has been concealing/hiding his earnings since 2006 in a JOINT LLC shared with his wife who works for the same real estate company. All money from commission checks for BOTH he and wife were deposited into that JOINT LLC account and claimant did not report/claim the earnings, fraudulent.

(R. at 99.) The state agency found a "reason to believe [Plaintiff] falsely represented his functioning at the 8/2005 CE in fear of losing his benefits" (R. at 98) and that the "[t]otality of all information supports the decision made to cease benefits and reopening the 2005 CPD decision due to New and Material Evidence related to FRAUD" (R. at 99). The initial determination also noted that the report of investigation on file supported the decision of medical improvement. (R. at 100.) Therefore, the state agency concluded that Plaintiff's benefits should have ceased in April 2005. (R. at 99)

Following a June 5, 2023 hearing, a state disability hearing officer issued a decision dated July 28, 2023. (R. at 192-203.) The hearing officer explained that "upon receiving new and material evidence, a reopening and revision resulted in benefits being ceased retroactively to 04/01/2005." (R. at 194.) The hearing officer affirmed that decision, explaining:

> Given the fact that [Plaintiff] was working as a real estate agent from 2006-2019 with substantial earnings, Hearing Officer finds it reasonable to believe that new and material evidence was present given that [Plaintiff] failed to report earnings;

> therefore, giving the appearance of fraud or similar fault by not reporting earnings according to Social Security guidelines.

(R. at 198.) Plaintiff appealed this decision to the ALJ. (R. at 208.)

In advance of the administrative hearing, Plaintiff notified the ALJ of his intent to call two witnesses to testify on his behalf, describing them as "imperative to his case." (R. at 447, 464.) Plaintiff also presented evidence regarding the formation of the "JOINT LLC," employee earnings records for the LLC, and tax documentation relating to the LLC. (R. at 274-368, 452-63.)

At the start of the December 14, 2023 hearing, the ALJ inquired about Plaintiff's witnesses and the subject of their testimony. (R. at 44.) The attorney representing Plaintiff at the hearing level explained that the witnesses would testify about Plaintiff's spouse's LLC and Plaintiff's role in the business. (R. at 45.) The attorney further explained to the ALJ, "Your Honor, you know we have an issue that my client is accused of fraud in this case." (R. at 49.) The ALJ responded, "I do, but if – I'm not handling that. There's a $162,000 overpayment. That's not in front of me, so in front of me is the medical record and the claim. So whatever you need to do, I understand." (R. at 49.) This exchange then followed:

> ATTY: – *the decision in 13B [the state disability hearing officer's decision] is what's appealed, and that says fraud*, you know.
> ALJ: Well, I am here dealing with the cessation; the termination. Give me a sec, because if you're confused –
> ATTY: Yeah, I –
> ALJ: – then I'm confused.
> ATTY: Yeah, because we appealed – you know, 13B is, you know, what the Request for Hearing was filed on. . . . I mean, cessation is one thing as well, but in order to have this $162,000 overpayment, *there has to be fraud to reopen it that far back*, and that's really –
> ALJ: Now, I don't have the overpayment. I have a disability hearing. I'm going to tell you why I say that. 13B, let me look at that. Okay. Yeah, so that's the decision of the Hearing Officer.
> ATTY: But – and finding him not disabled back to 2005.
> ALJ: Right, and so I'm here to determine whether or not that's true. I'm not here to deal with that overpayment. I mean, I may be, in the future, but this is not –
> ATTY: Well –

ALJ: This is not an overpayment case; this is a disability case. So you – I mean, what I need is information on the disability and –
ATTY: Okay.
ALJ: – the fact that it was going back that far. I simply don't have the overpayment. If that throws you for a loop, we can postpone this, because to me –
ATTY: Your Honor, I just don't know how – these overpayments these days, when we try and appeal these things, nobody does anything, and I would like to – because I mean, again, *this is what we're filing the appeal on. The decision says that they committed fraud, and we're all prepared to go. That's what my witnesses are here for* –
ALJ: Well, don't you think –
ATTY: – this issue.
ALJ: – that's the same thing? If there's no fraud –
ATTY: Okay.
ALJ: – then the disability is established, right, because –
ATTY: Okay.
ALJ: – he's already found eligible, so I'm not dealing with whether or not he's got to repay that money. That's all they want you to know. I am here –
ATTY: Okay.
ALJ: – dealing with disability going back to 2005.
ATTY: You're not going to make a finding on the issue of whether he – whether there was fraud involved here?
ALJ: Well, I guess I am. I'm not – *it's not up to me to find fraud. Fraud has been found*. You – if you and your witnesses today demonstrate –
ATTY: Okay.
ALJ: – to me that disability went back to 2005, then I make a disability – I make a favorable decision. Does that negate the fraud? I suppose it does.
ATTY: Okay.
ALJ: But that's my job.
ATTY: I guess you're right. I guess you're right. Okay.
ALJ: Yeah, I don't have the money in front of me.
ATTY: Well, okay. Thank you, Your Honor.

(R. at 50-52 (emphasis added).)

Plaintiff's attorney at the hearing level called Plaintiff's spouse and one of the other two witnesses identified, and they, among other things, testified about Plaintiff's involvement or lack of involvement in the LLC. (R. at 57-75.) The ALJ declined to allow Plaintiff to call the second witness due to time constraints but offered to schedule another time for other witnesses to testify. (R. at 76.) Another exchange followed regarding the scope of the issues on review before the ALJ:

> ATTY: Well, the other thing, Your Honor, I would like – I don't know, like, if there's any way for you to take a look at what you – where your jurisdiction is here and maybe reconsider what's in front of you or how – or maybe you can ask for it to be pulled up, because *we certainly, you know, came prepared to address this issue of fraud and whether or not – you know, that's the finding in the – in what we appealed.* I just – but I guess, I mean, assuming if you were to find him not disabled, we still have that issue. I just don't – I – you know, we are hoping to kind of, one way or another, you know, wrap this up. The other witness that I was going to have would testify, I will just tell you, to the same thing: that he's – that's her assistant. He's not a – you know, willing to testify – obviously, these disinterested parties at the penalty of perjury. I just – I don't see that, so I'm not going to ask for a supplemental hearing to bring [this] testimony in, but you know, I would like to make sure that you don't have jurisdiction over the fraud issue.
> ALJ: Okay. All right. And so when I have an overpayment case, it's clearly marked a non-disability case, and this is a disability case. . . .
> . . .
> ATTY: Well, and that – you know, I would just add to that, I mean, there's two psychological reports in this case. That's all there is. And both of them – you know, he did suffer a traumatic brain injury, and both of those psychologists are pretty consistent, and *it would be hard to imagine him fooling them to that extent. And the only evidence against him here is this, you know, hearsay evidence that I don't – you know, that I just don't know.* That's it, Your Honor.

(R. at 76-77 (emphasis added).)

Following the hearing, the ALJ issued a decision acknowledging that "it was later determined" that Plaintiff's condition "had improved since the comparison point decision (CPD) of August 24, 2005 and that [Plaintiff] could now perform work activity." (R. at 25.) Specifically, she noted that "upon receiving new and material evidence, a reopening and revision resulted in benefits being ceased retroactively to 04/01/2005. Claimant appeals and states that disability continues because of anxiety, depression, and cognitive problems." (R. at 25.) The ALJ, however, made no findings about fraud and did not otherwise evaluate the testimony or exhibits Plaintiff presented regarding the same.

**C. <u>Plaintiff Was Denied the Opportunity to Contest the Fraud Allegations Against Him, and the Decision to Reopen the 2005 CPD Lacks Substantial Evidence Absent a Finding of Fraud</u>**

On this record and considering Fourth Circuit precedent, the Court finds that Plaintiff was denied a meaningful opportunity to challenge the fraud allegations against him, which served as the basis for the reopening of the 2005 CPD. *Kirk*, 987 F.3d at 328. Specifically, he appealed a decision ceasing his benefits back to 2005 based on fraud, lined up witnesses to testify at the hearing about the fraud allegations and presented documentary evidence as to the same, and was told by the ALJ that fraud had already been established and was not under review. Although the ALJ acknowledged the procedural history in this case, she did not identify evidence supporting a fraud finding or evaluate the evidence presented by Plaintiff to rebut the same, never made a fraud finding, and did not explain why any fraud determination should stand. (*See* R. at 23, 25.)

The Commissioner argues that the ALJ implicitly affirmed the fraud determination made by DDS by repeating its decision to reopen the 2005 CPD. (ECF No. 17, at 12.) That recitation alone, however, fails to provide the logical bridge required between the evidence considered and the ALJ's conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)) (internal quotation marks omitted). In addition, the ALJ made clear that she did not view the fraud allegations as properly before her and that she did not intend to make a finding as to this issue.

The Commissioner further contends that, "Nothing in the regulations requires the ALJ to make such an explicit finding of fraud when the agency has already done so at the administrative level." (ECF No. 17, at 12-13.) The Fourth Circuit, however, requires the SSA to give beneficiaries a meaningful opportunity to challenge and defend against fraud allegations. *Kirk*, 987 F.3d at 328. Notably absent from the Commissioner's briefing is any acknowledgement of

the *Kirk* decision or discussion of how it impacts this case. That decision makes clear that the due process "opportunity necessarily encompasses a chance to contest the agency's fraud allegations, which are undoubtably material to the ultimate issue of whether an individual's benefits should be terminated." *Id.* at 327. As explained by the Fourth Circuit, "the risk of an erroneous deprivation is too high where an individual is not provided 'notice of the factual basis' for a material government finding and 'a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker.'" *Id.* at 325 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)).

Because Plaintiff was denied the opportunity to challenge the fraud allegations and because the ALJ failed to make any findings regarding the same, the Court remands this decision for further administrative proceedings. In doing so, the Court expresses no opinion as to the merits of the fraud allegations or Plaintiff's claim for disability insurance benefits. Because this issue is dispositive, the Court need not address the other arguments raised by Plaintiff in challenging the ALJ's decision. On remand, however, the ALJ should also consider those additional allegations of error.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that (1) Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED; (2) Defendant's Motion for Summary Judgment (ECF No. 17) be DENIED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: August 11, 2026